UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON FROMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-00220-JMS-DML |
| | ) |
| CORIZON, INC., | ) |
| NOE MARANDET M.D., individually | ) |
| and in his official capacity as an | ) |
| employee of Defendant Corizon, Inc., | ) |
| NAVEEN RAJOLI M.D., individually | ) |
| and in his official capacity as an | ) |
| employee of Defendant Corizon, Inc., | ) |
| MIAMI CORRECTIONAL FACILITY | ) |
| HEALTH SERVICES | ) |
| ADMINISTRATOR individually and in | ) |
| his or her official capacity as an | ) |
| employee of Defendant Corizon, Inc., and | ) |
| PUTNAMVILLE CORRECTIONAL | ) |
| FACILITY HEALTH SERVICES | ) |
| ADMINISTRATOR individually and in | ) |
| his or her official capacity as an | ) |
| employee of Defendant Corizon, Inc., | ) |
| | ) |
| Defendants. | ) |

## Order on Plaintiff's Motion Regarding Sufficiency of Objections (Dkt. 56) and on Plaintiff's Motion to Compel Discovery and for Extension of Time to Serve Expert Reports (Dkt. 57).

This case has hit a wall because of neglect on both sides of the caption regarding defendants that plaintiff Aaron Fromer named in his complaint as (a) "Miami Correctional Facility Health Services Administrator individually and in his or her official capacity as an employee of Defendant Corizon, Inc." (hereafter,

"Miami HSA") and (b) Putnamville Correctional Facility Health Services Administrator individually and in his or her official capacity as an employee of Defendant Corizon, Inc" (hereafter, "Putnamville HSA").

This order contains various rulings intended to put this case back on course, while recognizing that both parties share blame for the current state of affairs. As explained below, the court will give the plaintiff an opportunity to seek to amend his complaint *if* he wishes to pursue individual judgments against the Miami HSA and Putnamville HAS and can do so consistent with the facts gathered to date and Fed. R. Civ. P. 11. (The court makes no determination at this time whether leave to amend will, in fact, be granted.) The court will require the defendants to provide at this time answers to discovery on behalf of the offices of Miami HSA and Putnamville HSA and requires other supplements to the defendants' discovery responses. It extends the time for the plaintiff to serve his expert report. And it recommends that the District Court (a) deny the defendants' motion for summary judgment but without prejudice to its renewal after they serve supplemental answers to discovery and (b) vacate the current trial date.

## The Complaint, Its Service, and the Defendants' Answers

Mr. Fromer is in prison. His complaint alleges that the health care he received for infections, which ultimately were diagnosed as MRSA, while incarcerated at Miami (from March 2009 to June 2012) and Putnamville (from June 20, 2012, to the time his complaint was filed) was so inadequate and ineffective that his constitutional rights were violated. In addition to naming as defendants the

Miami and Putnamville HSAs, Mr. Fromer named two doctors—Noe Marandet, M.D., who saw him while at Miami, and Naveen Rajoli, M.D., who saw him while at Putnamville—and Corizon, Inc., a private corporation that has (and had at the time period Mr. Fromer received medical care) a contract with the Indiana Department of Corrections to provide medical care to inmates at IDOC facilities, including Miami and Putnamville. According to the complaint, Corizon employed the two defendant doctors and the Miami and Putnamville HSAs during the relevant periods.

Mr. Fromer's complaint states that he does not know the identities of the persons who served as the Miami HSA or the Putnamville HSA. Even though Mr. Fromer's complaint purports to sue people who held these positions in their individual capacities, he did not name any individuals who occupied these positions and against whom he seeks a monetary judgment. And despite not having named individuals, Mr. Fromer mailed summonses and complaints addressed to the office of Miami HSA and the office of Putnamville HSA. He then filed proofs of service and attached the certified mailing return green cards showing that someone at each prison signed for the papers addressed to the "Miami Correctional Facility Health Services Administrator" and "Putnamville Correctional Facility Health Services Administrator." (Dkts. 16 and 17).

Naming an office without naming and serving a particular individual is insufficient for the court to exercise personal jurisdiction and have power eventually to enter judgment against the individual. In cases such as this one, where the

3

plaintiff needs some discovery to identify the persons he believes wronged him, the court generally allows the plaintiff sufficient time to learn the names and then serve them with summonses so that the court can exercise personal jurisdiction. The Seventh Circuit described this process in *Rodriguez v. Plymouth Ambulance Service,* 577 F.3d 816 (7th Cir. 2009), noting particularly that it is not unusual in prison cases that the plaintiff does not at the time of filing his complaint know the names of the persons who injured him. The court remarked:

> If a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous. The principle is not limited to prisoner cases. It applies to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery. . . . Of course, eventually the plaintiff must discover the names of the defendants in order to serve summonses on them and thus establish the court's personal jurisdiction, without which the suit must be dismissed.

*Id.* at 821 (quoting *Billman v. Indiana Department of Corrections,* 56 F.3d 785, 789-90 (7th Cir. 1995)).

Until very recently, defendants' counsel never contended that Mr. Fromer had not done enough to state claims against the Miami HSA or the Putnamville HSA, *individually* and in their capacities as Corizon employees or to bring such persons within the jurisdiction of the court. Indeed, defendants' counsel consistently acted as if claims had been stated against Miami HSA and Putnamville HSA. Counsel (a) entered appearances for Miami HSA and Putnamville HSA, (b)

4

asked for time for them to respond to the complaint; (c) filed answers that say nothing about the plaintiff having failed properly to name individuals, insufficient service, or lack of jurisdiction[1]; (d) filed a proposed case management plan that did not alert the plaintiff or the court to these issues and instead provided merit-based reasons why the two HSAs are not liable (they were "not personally involved in Mr. Fromer's medical care and therefore cannot be held liable on a Section 1983 claim"); (e) appeared at the initial pretrial conference on behalf of the two HSAs; (e) filed witness and exhibit lists on their behalf; (f) sought extensions of time for them to complete case management tasks; (g) appeared at a telephone status conference for them; and (h) participated in a settlement conference and filed a confidential settlement statement on their behalves.

Shortly after the initial pretrial conference held April 4, 2013, defendants' counsel sent emails to Mr. Fromer notifying him of the names of persons who were the HSA at Miami and Putnamville "during the relevant time period" (*see* Dkt. 60-1 and 60-2). Mr. Fromer did not thereafter seek to amend his complaint to name these individuals and bring them within the jurisdiction of the court.[2] Rather, Mr.

---

[1] Instead, the answer says that the complaint fails to state claims against the Miami HSA and Putnamville HSA because these administrators "were not personally involved in the alleged constitutional violation." *See* Dkt. 20, Affirmative Defenses ¶ 2.

[2] It is not clear whether the information from defendants' counsel was accurate. For example, counsel advised Mr. Fromer that the Putnamville HSA was Michael Natalie, who started work there on July 1, 2012. (Dkt. 60-2). But when Mr. Natalie was deposed, he testified that his employment as the Putnamville HSA began a year later, on July 23, 2013, which is *after* Mr. Fromer filed his complaint. (Natalie Dep. Trans. page 13:15-23, Dkt. 60-3).

Fromer went along apparently assuming that nothing more needed to be done (or he just forgot he needed to seek to amend the complaint) and defendants' counsel also continued to participate in the case on behalf of the HSAs in their "individual" and their "official" capacities as Corizon employees, including participating in a settlement conference with the magistrate judge in February 2014.

In mid-December 2013, Mr. Fromer served his first sets of written discovery requests. He served interrogatories, requests for admission, and document requests on (a) Corizon; (b) the two doctors named in the complaint; (c) the Miami HSA; and (d) the Putnamville HSA. About a month later, on January 21, 2014, a new lawyer (Brian Richtarcik) for the defendants became involved and was assigned the responsibility to answer all of the discovery. (*See* Dkt. 70 at p. 2). He promptly, with the plaintiff's consent, obtained additional time to answer the discovery and served answers in mid-February 2014. Not until mid-February when defense counsel refused to respond to written discovery requests issued to the Miami and Putnamville HSAs did defense counsel for the first time assert that they had not been properly named or served.

### Requests for Admission to Miami and Putnamville HSAs

The Miami and Putnamville HSAs refused to answer the requests for admission directed to them on the ground that they are anonymous parties that Mr. Fromer never properly sued or served. Although the court agrees that there are not yet any persons before the court sued in their individual capacities as Miami and Putnamville HSAs and against whom any judgments in their individual capacities

6

could be entered, the defendants have consistently litigated this case as if they represent the offices of Miami and Putnamville HSAs as agents and employees of Corizon. The court will require Corizon to answer each of the requests for admission directed to the Miami and Putnamville HSAs, and Corizon must provide answers based on information within its possession, custody, and control, and on information it can reasonably obtain from its agents and employees. In the answers (*see* Request for Admission #s 3 and 4), Corizon must identify by name the person(s) who served as the Miami HSA or Putnamville HSA within the time periods listed in the request. To answer the remaining requests, Corizon must provide answers based on whether the office of the Miami HSA or Putnamville HSA, respectively, had the duties and responsibilities described in the requests during the time periods that Mr. Fromer contends he was denied appropriate medical care. In providing answers based on the usual and expected duties of the HSAs, Corizon must conduct a good faith and through investigation of facts and information available to it. Corizon must provide the answers within 14 days of the date of this entry.

The court denies the plaintiff's request that the court deem all of the requests admitted.

### Claims against individual Miami or Putnamville HSAs can be pursued only through an amended complaint.

Mr. Fromer must seek leave to amend his complaint to name individuals who are, or were, the Miami or Putnamville HSA against whom he seeks relief in their individual capacities. Any such motion must be filed within 10 days of the date of this entry. The court expresses no opinion here whether Mr. Fromer will be able to

7

demonstrate the requisite diligence on his behalf and lack of prejudice to others to gain this court's permission to amend. *See, e.g., Alioto v. Town of Lisbon,* 651 F.3d 715, 719-20 (7th Cir. 2011) (party who seeks to amend after case management deadline must satisfy Rule 16's good cause standard and Rule 15(a)). Mr. Fromer should consider too whether he has any factual basis to support claims for individual liability. If individual capacity claims are not permitted, then the allegations against the Miami and Putnamville HSAs will be deemed allegations against Corizon based on its employment of the HSAs.

## Other Discovery Disputes

The other discovery disputes between the parties are described in the plaintiff's motion to compel (Dkt. 57) and the defendants' response brief (Dkt. 69). The discovery requests at issue are listed in Dkt. 57-4. In the court's view, the defendants' discovery responses—the sufficiency of which are now before it on the plaintiff's motions—reflect counsel's attempt to avoid the effort necessary to provide real answers (working with client representatives to obtain the necessary information and documents). The court now turns to these discovery issues.

A. <u>Interrogatories and Document Requests to Putnamville and Miami HSAs</u>.

Corizon must answer these discovery requests on behalf of these HSAs and based on documents and information available through a good-faith and thorough investigation by Corizon. Corizon is not, however, required to answer Interrogatories 4, 7, 13, or 14, or respond to Document Requests 28, 40, 43, 46, or 47. The other interrogatories and document requests must be answered based on

8

information known or reasonably available to the occupant of the positions of Putnamville and Miami HSAs or to Corizon itself. The court does not prevent Corizon from interposing objections to these requests based on undue burden or expense if such objections can be made in good faith. The court does prevent Corizon from refusing to provide information based solely on the fact that the plaintiff has not effected suit against any persons in their individual capacities who served as the HSAs.

The answers and documents must be served by Corizon within 14 days.

B. <u>Interrogatories and Document Requests to Dr. Marandet</u>

1. <u>Interrogatory 9</u>. The court agrees with Mr. Fromer that the answer to interrogatory 9 appears incomplete. Dr. Marandet does not explain what each identified person did in the decision-making process about the plaintiff's medical care and treatment. He must supplement his answer. In answering this interrogatory, Dr. Marandet is required to review and consider all information reasonably available to him, including Mr. Fromer's medical chart. Dr. Marandet should review the chart—and not just his lawyer—so that he can provide full and complete answers.

2. <u>Requests for Production 4, 5, 6, 7, 8, 9, 10, 11, 13, and 14</u>. The court DENIES the motion to compel with respect to all these requests except request 7. Dr. Marandet must produce the insurance policy if he has not already done so. Request 11 seeks irrelevant information and no response is required. As to requests 4, 5, 6, 8, 9, 10, and 13, Dr. Marandet's answers clearly state that he does not

possess any responsive documents.  As to request 14, Dr. Marandet sufficiently explained that Mr. Fromer's medical chart is the basis for his denials of allegations in the complaint.

    C.  <u>Interrogatories and Document Requests to Dr. Rajoli</u>

        1.     <u>Interrogatories 9, 11, 17, and 18</u>.  Dr. Rajoli must supplement the answers to these interrogatories.  Dr. Rajoli's answers to 9, 11, and 17 refer Mr. Fromer to his medical chart; those answers are insufficient.  Dr. Rajoli must review the medical chart and any other information reasonably available to her and then specifically list the persons involved in decision-making for Mr. Fromer's medical care and the ways they were so involved, list the persons who she believes has relevant facts and the nature of each person's knowledge, and the specific ways Dr. Rajoli believes that Mr. Fromer was not compliant with treatment.  As to interrogatory 18, Dr. Rajoli's answer is inadequate—there is no detail regarding the difference between "regular" and "chronic care" conditions as they pertain to the categories described in this question.  Dr. Rajoli must provide more detail regarding these categories and how disease management is different between these categories, if it is.

        2.     <u>Requests for Production 6, 8, 10, 12, 13, 14, and 17</u>.  The court denies the motion to compel Dr. Rajoli to supplement his response to document request 14.  He made clear that he is relying on the contents of Mr. Fromer's medical chart to support his denials of allegations in the complaint.  The court also denies the

motion with respect to document requests 6, 8, 10, 12, 13, and 17. Mr. Fromer has not sufficiently demonstrated that the responses are unclear.

   D. <u>Interrogatories and Document Requests to Corizon.</u>

   1. <u>Interrogatories 3, 9, and 10</u>. The court is satisfied that the answer to Interrogatory 3 is sufficiently complete. As to Interrogatory 9, Corizon must state whether it contends that *all* information it had regarding Mr. Fromer's medical condition is contained in Mr. Fromer's medical chart. As to Interrogatory 10, Corizon must state whether it contends that every single person mentioned on any part of Mr. Fromer's medical chart was involved in the "decision making process" for Mr. Fromer's care and treatment. If that is not the case, then Corizon must supplement its answer to Interrogatory 10 and list specifically the persons it contends was involved in that decision making.

   2. <u>Requests for Production 7, 8, 12, 13, 14, 16, 17, 18, 19, 20, 21, 24, 28, 31, 32, 33, 36, 43, 44, 45, 49, and 53.</u>

   The court GRANTS Mr. Fromer's motion to compel as to request #7. It is not persuaded by Corizon's argument that it does not have to produce the requested documentation because of copyright issues. It is also not persuaded that the information is so easily obtainable by the plaintiff from other sources that Corizon should be relieved of providing it.

As to requests 8, 12, 13, 16-18 (as narrowed to matters pertaining to suspected or confirmed MRSA infections)[3], 19-20, 21 (as narrowed to grievances, complaints, investigations, and disciplinary against the HSAs or Corizon's Regional Medical Director), 28, 31, 33 (as narrowed to medications), and 36 (as narrowed to suspected or confirmed MRSA infections), the court is not persuaded by Corizon's objections on relevancy grounds or its contention that Mr. Fromer's requests are an unwarranted fishing expedition. Mr. Fromer is attempting to establish (a) infectious disease and control practices known to or utilized by Corizon and its employees in providing medical care and treatment, (b) Corizon's awareness of problems with infectious diseases as to Mr. Fromer personally and throughout the facilities at which he was incarcerated; (c) whether Mr. Fromer may have been denied appropriate treatment based on cost-cutting practices; and (d) whether Drs. Marandet and Rajoli or other officials with primary responsibility for his care have been the subject of other complaints, grievances, investigations, or disciplinary action. The foregoing requests described in this paragraph are relevant to these matters and responsive documents must be produced by Corizon.

As to requests 43, 44, 45, and 49, the court requires Corizon to produce minutes of the subject meetings (for Health Services Staff meetings, Quality Assurance meetings, Safety and Sanitation/Infection Control meetings, and Peer Review Committee meetings pertaining to Miami and Putnamville) for the period

---

[3] Mr. Fromer narrowed some of his requests as described in his email at Dkt. 57-4. In some instances, the court has further narrowed the scope of discovery it finds appropriate.

January 1, 2009, through December 31, 2013, to the extent that the meeting minutes pertain to or reference MRSA.

As to requests 14 and 53, the court is satisfied with the explanation provided in the defendants' response brief that the job descriptions Corizon produced were "in effect at Miami and Putnamville correctional facilities during the time in question." (Dkt. 70 at p. 6). No further supplementation is required.

For request 24, Corizon must produce the ACA report for Putnamville if it has not done so already.

For request 32, Mr. Fromer has not demonstrated how "all" documents pertaining to Quality Assurance are reasonably necessary for the prosecution of his claims. The court denies his motion as to that request.

As to the documents the court is requiring Corizon to produce and supplements to interrogatories Corizon is required to make, the documents and information must be provided within 14 days of the date of this order. In addition, the court is amenable to entering an appropriate protective order if warranted. Any motion for protective order should promptly be filed.

**Mr. Fromer's Request for More Time to Serve an Expert Report**

The court agrees with Mr. Fromer that his deadline to serve an expert report should be extended until after he receives the supplemental discovery from the defendants that the court is requiring in this order.

The court GRANTS Mr. Fromer until June 9, 2014, to serve his expert report. If upon receipt of the defendants' supplemental discovery responses, Mr. Fromer believes he will need additional time to serve his expert report, he must immediately seek that time from the court. An extension is not assured. Rather, Mr. Fromer will be expected to demonstrate specifically why his expert is or will be unable to complete an expert report because of alleged deficiencies in the defendants' supplemental discovery responses.

**Recommendation to the District Judge Regarding Summary Judgment and the Trial Date**

Because the court is requiring the defendants to provide supplemental discovery responses and is permitting Mr. Fromer time to serve an expert report, the court recommends that the district judge deny the defendants' motion for summary judgment but without prejudice to its renewal after supplemental discovery is provided. The magistrate recommends that the district judge establish a new deadline of May 19, 2014, for the defendants to file dispositive motions. That deadline allows sufficient time to the plaintiff after service of the new motion to evaluate the defendants' supplemental discovery responses and obtain and serve his own expert reports before a responsive brief is due.

The proposed new time frame interferes with the current trial date. The magistrate judge recommends that the court set a new trial date, to occur no earlier than January 2015.

## Conclusion

The plaintiff's motion regarding the sufficiency of the objections to the requests for admission served on the Miami and Putnamville HSAs (Dkt. 56) is **GRANTED IN PART AND DENIED IN PART** as described in this order.

The plaintiff's motion to compel (Dkt. 57) is **GRANTED IN PART AND DENIED IN PART** as described in this order.

The defendants' supplemental discovery responses as ordered herein must be served on the plaintiff within 14 days of the date of this order.

Any motion for leave to amend must be filed within 10 days of the date of this order.

The plaintiff's request for an extension of time to serve his expert reports is **GRANTED** in that the plaintiff must serve any expert report on or before **June 9, 2014.**

The magistrate judge recommends that the district judge (a) deny the defendants' pending motion for summary judgment without prejudice; (b) establish a new dispositive motion deadline of May 19, 2014; and (c) continue the trial date to a time no earlier than January 2015.

So **ORDERED**.

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

**Date:** 04/14/2014

**Distribution:**

**All ECF-registered counsel of record via email generated by the court's ECF system**